MARRON, RESPONDENT, *v.* GREAT NORTHERN RAILWAY CO., APPELLANT.

(No. 3,216.)

(Submitted January 13, 1913.    Decided February 1, 1913.)

[129 Pac. 1055.]

*Railroads — Crops — Destruction by Fire — Negligence — Damages — Evidence — Witnesses — Refreshing Memory — Memoranda—Admissibility in Evidence.*

Railroads—Destruction of Crops by Fire—Damages—Evidence—Admissibility.

1.    For the purpose of showing the extent and character of plaintiff's injury in an action against a railroad company for damages occasioned by defendant's careless operation of one of its locomotives whereby the grass and vegetation on his land were set afire, evidence that the grass roots were damaged, that it required two or three years for the sod of a meadow to recover from the effects of the fire, *etc.*, was properly admitted, conceding the measure of damages for such injury to be the diminished value of the realty because of the fire.

Same.

2.    There having been a crop of grass on plaintiff's land at the time of the fire alleged to have been caused by defendant's negligence, which had a separate and independent value of its own, he was properly permitted to testify as to such value, the measure of recovery in such case being the value of the thing thus destroyed, and not the difference in the value of the land before and after the fire.

Evidence—Nonprejudicial Error.

3.    Alleged error in the admission of answers to questions asked expert witnesses, preliminary in character, each of which could have been answered yes or no, could not have wrought prejudice to appellant.

Instructions—When Refusal Proper.

4.    An offered instruction upon a matter not in issue was properly refused.

Witnesses—Refreshing Memory—Admissibility—Prerequisites.

5.    Before a witness who has not any independent recollection of a fact about which he is interrogated can be permitted to testify under sec-

46 Mont.—38

tion 8020, Revised Codes, after refreshing his memory from a writing, or give his testimony directly from it, he must qualify by showing that the entry was made by himself or under his direction at the time the fact occurred or while it was fresh in his memory, and that he knew at the time it was made that it correctly stated the fact.

Evidence—Writings—Inadmissibility.

6. *Held*, that a memorandum made by a witness who could not qualify under the provisions of section 8020, Revised Codes, and was therefore unable to testify by its aid or directly from it, was itself inadmissible.

Railroads—Destruction of Crops by Fire—Evidence—Sufficiency.

7. While defendant's train was in the neighborhood of plaintiff's land smoke was seen arising from the ground; a witness went toward the place and found some of plaintiff's land burned over and a haystack on fire; two or three other fires were started between two certain stations by the same train; several fires were set during the week plaintiff's property was burned; in going up-grade, not only sparks, but "good-sized chunks of fire" were thrown from the locomotive, *etc.* Evidence *held* sufficient to warrant the inference that defendant's locomotives caused the fire.

*Appeal from District Court, Valley County; Frank N. Utter, Judge.*

ACTION by Peter Marron to recover damages from defendant Great Northern Railway Company for the destruction of property caused by fires started by the negligent operation of its locomotives. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

*Messrs. Veazey & Veazey,* and *Mr. E. L. Bishop,* for Appellant, submitted a brief; *Mr. I. Parker Veazey, Jr.,* argued the cause orally.

· The measure of damages for injury to his land by reason of the destruction of the roots of the native and perennial blue-joint grass is the difference between the value of the land before and after the fire and not the value of the crop which might, but for the fire, have been produced the following year. In 3 Sedgwick on Damages, ninth edition, 1939, the rule is laid down as follows: "If, however, the destruction is not of an annual crop, but of a more or less permanent one, as the turf of a pasture or meadow, the injury becomes an injury to the land itself, and the measure of damages is the diminished value of the land." (See, also, *Atlanta etc. Ry. Co.* v. *Brown,* 158 Ala. 607, 48 South. 75; *Thompson* v. *Railway Co.,* 84 Neb. 482, 121 N. W. 448; *Railway Co.* v. *Hogsett,* 67 Tex. 685, 4 S. W. 366;

*Ward* v. *Railway Co.,* 61 Minn. 449, 63 N. W. 1104; *Railway Co.* v. *Warnecke,* 43 Tex. Civ. 83, 95 S. W. 601; *Railway Co.* v. *Qualls* (Tex. Civ.), 124 S. W. 141; *Wiggins* v. *Railway Co.,* 119 Mo. App. 492, 95 S. W. 311; *Mattis* v. *Railway Co.,* 138 Mo. App. 61, 119 S. W. 998; *Railway Co.* v. *Walsh,* 11 Ind. App. 13, 38 N. E. 534; *Adams* v. *Railway Co.* (Mo. App.), 122 S. W. 1136.) In a few states it has been held that the measure of damages for the destruction by fire of crops which grow from seed and can be reseeded and restored in one season is the cost of restoring the meadow and the rental value of the land during the season lost. (*Mattis* v. *Railway Co., supra.*)   However, we have found no cases applying this rule to the destruction of the roots of wild or prairie grass, such as the blue-joint involved in this case.   In fact, the rule is not susceptible of such application, as such grasses are not, and cannot be, reseeded by man. Even if this rule were applicable and adopted in this case, the court should still have given defendant's request No. 4, since there was no evidence adduced as to the cost of restoring the meadow or the rental value of the land in the interim.   (*Railway Co.* v. *Jones,* 59 Ark. 105, 26 S. W. 597, 598; *Wiggin* v. *Railway Co.,* 119 Mo. App. 492, 95 S. W. 312.)

"Private memoranda may, under certain conditions, be used by a witness to refresh his recollection, and this according to the generally accepted rule, even in a case where the witness has no present recollection of the facts, if he recollects that when the memorandum was made he knew it to be true, and hence can swear that it was correctly made; and under this rule the memorandum is according to many of the decisions allowed to go before the jury."   (17 Cyc. 399; see, also, *Insurance Co.* v. *Weides,* 14 Wall. (U. S.) 375, 20 L. Ed. 895; *Cross* v. *Bartholomew,* 42 Vt. 206; *Lewis* v. *Ingersol,* 1 Keyes (N. Y.), 357, 3 Abb. Dec. 55; *Passmore's Appeal,* 60 Mich. 463, 27 N. W. 603.)

"The witness may rely upon the accuracy of such memorandum and not his memory in testifying."   (*Cole* v. *Jessup,* 10 N. Y. 96; *Halsey* v. *Sinsebaugh,* 15 N. Y. 485; *Laphan* v. *Kelley,* 35 Vt. 195; *Southern Pac. Co.* v. *Cox & Co.* (Tex. Civ.), 136 S. W. 105; *People* v. *Lowrie,* 4 Cal. App. 137, 87 Pac. 254.)

Insufficiency of the Evidence: There was no evidence as to where the fire was set with reference to the railroad; no evidence as to whether the wind was blowing from the railroad toward the point at which the fire was set, or *vice versa,* and no evidence that the fire was set so near the railroad that it might, under any circumstances, by any possibility, have been communicated by sparks or fire from the engine. (*Manning* v. *Railway Co.,* 137 Mo. App. 631, 119 S. W. 464; *Lemann Co. Ltd.* v. *Railway Co.,* 128 La. 1089, 55 South. 684; *Peck* v. *Railway Co.,* 31 Mo. App. 123; *Railway Co.* v. *Edmonson,* 101 Ga. 747, 29 S. E. 213; *Finkelston* v. *Railway Co.,* 94 Wis. 270, 68 N. W. 1005; *Stratton* v. *Railway Co.,* 7 Colo. App. 126, 42 Pac. 602; *Denver T. & G. R. Co.* v. *De Graff,* 2 Colo. App. 42, 29 Pac. 664.)

*Messrs. Hurd & Lewis,* and *Mr. Paul Babcock,* for Respondent, submitted a brief; *Mr. Geo. E. Hurd* argued the cause orally.

Evidence relating to the measure of damages was admissible under the rule laid down by the authorities cited by counsel in their argument to the effect that the value of the crop which would have been raised upon such land during the several years following such fire is evidence of the value of the land before and after the fire. No evidence was admitted which would not tend directly to establish the diminished value of the land— the showing that the land was valuable blue-joint hay-land; that the roots of blue-joint grass are damaged by fire; and that such damage is of a "more or less permanent nature," as "is the turf of a pasture or meadow." Under the authorities cited by the appellant the injury became an injury to the land itself, and the testimony admitted tended to establish such injury to the land over which the fire had swept.

In this aspect of the case it is difficult to see the basis for the contention of the appellant that the plaintiff sought to recover for the value of the crop, instead of for the injury to the land. The theory of the trial court that the value of the crops which would have been raised upon this land, but for the burning, is material as tending to show the lessened value of the land itself

is well supported by the case of *Gulf, C. & S. F. Ry. Co.* v. *Jagoe* (Tex. Civ. App.), 32 S. W. 717.  The case of *Thompson* v. *Railway Co.*, 84 Neb. 482, 121 N. W. 447, directly affirms the correctness of the rule enunciated by the court in admitting the evidence complained of.  Directly in point upon the issue presented herein is the case of *Kyle* v. *Ohio River R. Co.*, 49 W. Va. 296, 38 S. E. 489.  In *Atlanta & B. Air Line Ry. Co.* v. *Brown*, 158 Ala. 607, 48 South. 73, cited by appellant, the supreme court of Alabama said: ''Where there is damage to the land, and also destruction of property attached to the land capable of ascertainment as to its value, recovery may be had for both''; citing *Receivers etc.* v. *Pfluger* (Tex. Civ. App.), 25 S. W. 792; *Ft. Worth etc. Ry.* v. *Wallace*, 74 Tex. 581, 12 S. W. 227.

The testimony of the witness Shea was not admissible, for the reason that exclusive of the memorandum he had no independent recollection of the inspection or the results thereof; because he could swear positively to the correctness of the record; and because he could not state, or did not state, with certainty that the record would not have been made had not the facts in question been true.  (8 Ency. of Pl. & Pr. 135.)

The next assignment of error of the appellant is as to the action of the trial court in sustaining the objection to the introduction of the book containing the record of the inspection of the engines identified by Mr. Shea and another.  Such books are not public records, and are not entitled to be introduced as evidence in the case.  They are not books of account and are not admissible.  They are not evidence in any respect, and may be used only to refresh the memory of the inspector, when the proper foundation is laid therefor.  (*Hicks* v. *Southern Ry. Co.*, 63 S. C. 559, 41 S. E. 753; *Baltimore & O. S. W. Ry. Co.* v. *Tripp*, 175 Ill. 251, 51 N. E. 833; *Hoffman* v. *Chicago, M. & St. P. Ry. Co.*, 40 Minn. 60, 41 N. W. 301.)

The evidence was sufficient to go to the jury.  It showed that upon numerous occasions the engine pulling this train had, only shortly prior to the instance in question, emitted sparks which actually did set fire to the grasses of the plaintiff and of other persons.  If evidence that the defendant's engine scattered burn-

ing cinders, starting fires in the prairie grass upon the land of other persons on many numerous occasions just prior to the one complained of in this cause of action, and that the fire in this case started just after this same destruction-breathing machine had passed, does not make a case go to the jury, the following authorities are not law: *Henry* v. *Southern Pacific Ry. Co.,* 50 Cal. 176; *Missouri etc. Ry. Co.* v. *Kincaid,* 29 Kan. 654; *Union Pac. Ry. Co.* v. *Ray,* 46 Neb. 750, 65 N. W. 773; *Dunning* v. *Maine Cent. R. R. Co.,* 91 Me. 87, 64 Am. St. Rep. 208, 39 Atl. 352; *Brown* v. *Benson,* 98 Ga. 372, 25 S. E. 455; *Smith* v. *Chicago, M. & St. P. Ry. Co.,* 4 S. D. 71, 55 N. W. 717.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The complaint in this action states three causes of action for damages to property, occasioned by fires alleged to have been started by the defendant railway company along its Plentywood line of road, in Valley county. It is alleged that the first fire occurred on September 18, 1910; the second on April 11, 1911; and the third on April 21, 1911. It is charged that these fires were caused by the negligence of the defendant company, and that certain stacks of hay, and the grass, pasturage and vegetation on plaintiff's land were destroyed. The answer admits the defendant's corporate existence and its operation of the Plentywood line of road, but denies all the other allegations of the complaint. The trial resulted in a verdict and judgment in favor of plaintiff, and it is from that judgment that this appeal is prosecuted.

1. Counsel for appellant insist that the trial court adopted an erroneous theory as to the measure of damages, and it is said that this is made apparent from the rulings admitting certain evidence, and the refusal to give certain instructions requested by the defendant.

(a) Specifications of errors 1, 3 and 6 relate to the admission of evidence to the effect "that by reason of the fire the land in question burned over, produced no crop to speak of in 1911; that the fire running over blue-joint hay land, such as this 'in-

jures the grass below the ground,' and 'it takes two or three
years to get it in the same condition as it was before'; * * *
that 'it damages the roots to a great extent, and it takes the
meadow from two or three years to get back to its original thick-
ness; if there is any bunches of hay left in taking the hay off
that field, it just absolutely burns out that piece of ground so
that it takes years to get back to its original thickness.' "   It is
[1]   insisted that injury to or destruction of the grass roots or
sôd of plaintiff's blue-joint meadow constituted injury to the
realty itself, and that the measure of damages for such injury is
the diminished value of the realty occasioned by the fire.   In sup-
port of this view numerous authorities are cited, including 3
Sedgwick on Damages, 9th ed., p. 1939; *Thompson* v. *Chicago,
B. & Q. Ry. Co.,* 84 Neb. 482, 121 N. W. 447; *Wiggins* v. *Railway
Co.,* 119 Mo. App. 492, 95 S. W. 311; *Terre Haute etc. Ry. Co.*
v. *Walsh,* 11 Ind. App. 13, 38 N. E. 534; *Ward* v. *Railway Co.,*
61 Minn. 449, 63 N. W. 1104; *Railway Co.* v. *Jagoe* (Tex. Civ.
App.), 32 S. W. 717; *Missouri etc. Ry. Co.* v. *Malone* (Tex. Civ.
App.), 126 S. W. 936.

No fault is found with the rule just stated, but counsel for
respondent contend that the evidence was properly admitted un-
der that rule, for the purpose of showing the extent and char-
acter of plaintiff's injury, and with this we agree.   If the fires
did not cause any injury whatever, then the plaintiff's case
would fall of its own weight.   This evidence tended to establish
the fact that the inheritance itself sustained injury and the
character and extent of that injury.   There is not any merit
whatever in appellant's contention; indeed, the very authorities
cited by its counsel fully warrant the trial court's action.   (*Rail-
way Co.* v. *Jagoe; Terre Haute etc. Ry. Co.* v. *Walsh; Ward* v.
*Railway Co.,* above.)

(b) Specification of error 2 has to do with a question asked
the respondent while a witness in his own behalf, as to the value
of the crop of grass on his land in September, 1910, which was
destroyed by the fire of September 18 of that year.   There is
[2]   evidence in the record which tends to establish the fact that
there was a growth of grass on the land at the time of the fire

which had a separate and independent value of its own. In entire harmony with the 'rule stated above is the further rule that "if the thing destroyed, although it is a part of the realty, has a value which can be accurately ascertained without reference to the soil on which it stands or out of which it grows, the recovery must be for the value of the thing thus destroyed, not the difference in the value of the land before and after such destruction." (*Atlantic & B. Air Line Ry. Co.* v. *Brown,* 158 Ala. 607, 48 South. 73; 4 Sutherland on Damages, 3d ed., 1023, 1049; *St. Louis etc. R. Co.* v. *Noland,* 75 Kan. 691, 90 Pac. 273.)

(c) Specifications 4, 5, 7 and 8 relate to rulings of the trial [3] court admitting opinion evidence as to the extent of plaintiff's damage. The questions objected to were all preliminary ones—each question could have been answered yes or no—and upon that ground alone the district court was justified in overruling the objections made. This court sits as a court of review, and it is incumbent upon the appellant to show error prejudicial to its interests. If the trial court's ruling is justified upon any ground, this court will not interfere.

(d) The court refused two instructions offered by the defendant, as follows:

"No. 3. You are instructed that the plaintiff is not entitled to recover in this action the value of any crop which he might have raised in 1911, upon any of the land burned over, referred to in the complaint.

"No. 4. You are instructed that the plaintiff is not entitled to recover in this action, for damage to the grass roots of the land burned over, referred to in the complaint."

There was not any contention whatever that plaintiff was [4] entitled to recover the value of the crops which might have been raised during 1911, and for that reason instruction No. 3 was properly refused.

It is somewhat difficult to comprehend just what was meant by instruction No. 4. The court should have advised the jury as to the proper measure of plaintiff's recovery and the elements which might be considered in arriving at the amount of his re-

covery; but there was not any request made for such an instruction.

2. Error is predicated upon the action of the trial court in excluding certain evidence. The defendant called Thomas Shea and A. H. Rollins, men employed by it in the shops at Williston, and whose duties required them to inspect the ash-pans and spark-arresters on locomotives used on the Plentywood line at the time of the fire in September, 1910. When called to the stand as witnesses, at the trial of this cause, neither of these men retained any independent recollection of his work on the particular locomotive which caused the fire of September 18, [5] 1910. These men kept a record-book in which they made entries of every inspection, but neither was able by examining the record-book to refresh his memory. It was sought to have the witness Shea testify directly from the record-book, but upon an adverse ruling from the court, counsel for defendant company then offered in evidence the book itself, and this offer was refused. In their endeavor to show that the trial court erred, counsel for appellant cite many cases from other states, but without reference to the statutes, if any, under which they were decided. Happily we are not left in doubt upon the subject at all.

(a) Section 8020, Revised Codes, provides: "A witness is allowed to refresh his memory respecting a fact by anything written by himself or under his direction at the time when the fact occurred or immediately thereafter, or at any other time when the fact was fresh in his memory and he knew that the same was correctly stated in the writing. But in such case the writing must be produced and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution."

This section comprehends two classes of witnesses. The first class includes the witness whose memory can be refreshed by reference to the memoranda. The second class includes the witness who does not retain any recollection of the particular facts

recorded in the memoranda even after he examines the entries which he made himself. The witness of the first class may refresh his memory, and, having done so, may then testify independently of the memoranda. The witness of the second class may testify directly from the memoranda. But before either one will be heard at all, these preliminary facts must be made to appear: (a) The entries must have been written by the witness himself or under his direction; (b) they must have been written at the time the facts occurred or at a time when the facts were fresh in the witness' memory; and (c) the witness must have known at the time the entries were made that they correctly stated the facts. Counsel for defendant failed to qualify the witness Shea under the rules just stated. He was not asked whether he knew at the time the entries were made in the record-book that the entries correctly stated the facts; and it is idle now to attempt to cure the oversight. The Code provision above is perfectly plain and its meaning is not open to doubt. Even though the trial court may have given a wrong reason for its ruling, so long as the ruling itself was correct it will not be disturbed.

(b) In those jurisdictions where the book containing the entries is admissible, it is required as a preliminary that the [6] correctness of the entries be made to appear, and if admissible here under preliminary proof of the facts required by section 8020 above, it is doubtful whether this offered proof would be admissible. But that in adopting the extremely liberal rules announced in section 8020 above, our legislature evinced an intention that the general rules of evidence under which such entries themselves are excluded should be observed here is obvious; otherwise the provisions of section 8020 are practically meaningless. The idea that the entries themselves may be introduced in evidence is negatived by the very liberal use to which they may be subjected in aid of witnesses. It will be noticed that upon cross-examination of the witness who made the entries, the entries may be read to the jury by the cross-examiner. If the entries themselves are admissible, all these provisions are meaningless. With great particularity the Code

has indicated the use which may be made of a private writing such as the one considered in this case, and the courts are not authorized to enlarge these provisions. "In this state there is no common law in any case where the law is declared by the Code." (Sec. 8060, Rev. Codes.) "The Code establishes the law of this state respecting the subjects to which it relates." (Sec. 8061.) These provisions are conclusive upon the question now under consideration.

3. Finally it is urged that the evidence is insufficient to sustain the allegations of the third cause of action, that the fire [7] of April 21, 1911, was caused by the defendant's locomotive. There is evidence to the effect that the plaintiff owned the west half of the northeast quarter of section 28, T. 35 N., R. 55 E., through which the defendant's Plentywood line of road runs; that the same fire which burned over six acres of this ground on April 21, also burned a stack of hay 150 or 200 yards from the track. A witness, Ator, at Plentywood, a mile and a half from the plaintiff's land, saw defendant's train approaching Plentywood on April 21 while it was some distance away, and while it was about the neighborhood of plaintiff's land he saw smoke arising from the ground, indicating a fire; he was on the lookout because other fires had been set by the defendant's train, and the witness owned a ranch in the same direction and near the line of defendant's road. Ator went down the track immediately and ascertained that the fire had burned over some of plaintiff's land and was then burning his stack of hay. While the witness does not tell us how near the burned area was to the track, he does indicate that the fire was so near that the smoke from the fire and the smoke from the locomotive appeared to commingle as he looked toward the fire and the oncoming train. On cross-examination this witness testified: "I saw this smoke rise up just after the train had passed and then saw the fire right away; to the best of my knowledge it was started by the Great Northern engine."

A witness, Misfeldt, testified that he was on defendant's train and saw it set the fire on plaintiff's land on April 11, and two or three other fires between Medicine Lake and Plentywood.

Plaintiff testified that he saw the defendant's train start three fires along the Plentywood line shortly before April 21, probably during the week of that date. The witness Ator testified that during the month of April, 1911, he saw the defendant's train start three fires near the Marron place. Clark, a witness for the defendant, testified that he was the only locomotive engineer on the Plentywood branch during April, 1911; that he used only two locomotives during that month; that he used the same locomotive on the 11th and 21st; that the track runs up-grade along by the plaintiff's place and into Plentywood; that he was probably running fifteen miles per hour as he passed through plaintiff's place on April 21; that "I might have been working the engine hard if I was a little bit late; I do not remember if I was or not; * * * I was going my best always when we are going in that direction"; that in going up-grade more sparks are thrown out than at any other time. "In going up-grade with an engine of the kind that I was running particularly, you have to be very careful in the way you handle your engine in order to keep from throwing out pretty good-sized chunks of fire, and with the engines used on the Great Northern, particularly in going up-grade, and working them hard, you can't prevent them from throwing out a big bunch of cinders and fire; * * * with the Great Northern engines in going up-grade, running the engine fast, and working the engine hard, they do sometimes throw out pretty good-sized chunks of fire."

We confess that this showing is very weak, and it is all the more inexcusable because it is perfectly apparent that better evidence could have been produced. The men who were fighting the fire on plaintiff's place when Ator reached there were not called or their absence accounted for. Even the witness Ator, who saw the area burned, was not asked to state where that particular piece of land was situated with reference to the railway track or the direction in which the wind was blowing at the time. But with all these infirmities, we cannot say that the evidence is insufficient to warrant the inference that the defendant's locomotive caused the fire. In each of the following cases a somewhat similar state of facts was presented, and it

was held sufficient to go to the jury: *Grand Trunk Ry. Co.* v.
*Richardson,* 91 U. S. 454, 23 L. Ed. 356; *Railroad Co.* v. *Noland,*
above; *Dunning* v. *Maine C. R. Co.,* 91 Me. 87, 64 Am. St. Rep.
208, 39 Atl. 52; *Brown* v. *Benson,* 98 Ga. 372, 25 S. E. 455.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER con-
cur.